## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| JOHN A. ST. PIERRE,<br>        Plaintiff,<br><br>        v.<br><br>NURSE TAWANNA, NURSE KIM<br>MARTIN, et al.,<br>        Defendants. | No. 14-cv-1866 (VAB) |

## ORDER ON MOTION TO DISMISS

Plaintiff, John A. St. Pierre, brings this action against Defendants, Nurse Tawanna[1],

Nurse Heidi Green, Nurse Kim Martin, Doctor Samuel Berkawitz, and Doctor Vinayak M.

Sathe, bringing claims alleging deliberate indifference to his medical needs in violation of the

Eighth Amendment and retaliation against him for filing grievances in violation of the First

Amendment under 42 U.S.C. § 1983 ("Section 1983"), as well as negligence and medical

malpractice under Connecticut state law.  Second Amend. Compl., ECF No. 39.  Mr. St. Pierre

seeks declaratory relief and monetary damages.  Pending before the Court is Defendants' motion

to dismiss Mr. St. Pierre's Second Amended Complaint in part, specifically the negligence and

medical malpractice claims, the request for declaratory judgment, the deliberate indifference

claims against Dr. Berkawitz, and the retaliation claim against Nurse Martin.  ECF No. 50.

For the reasons that follow, the Defendants' motion to dismiss the Second Amended

Complaint, ECF No. 50, is **GRANTED** in part and **DENIED** in part.  The Defendants' motion is

granted as to Mr. St. Pierre's negligence claims against all Defendants in their individual

---

[1] The parties do not provide a full name for Nurse Tawanna.

capacities and as to Mr. St. Pierre's negligence claims and medical malpractice claims against all Defendants in their official capacities.  Mr. St. Pierre's medical malpractice claims against the Defendants in their individual capacities will proceed, as will his request for declaratory judgment, the deliberate indifference claim against Dr. Berkawitz, and the retaliation claim against Nurse Martin.

## I.     FACTUAL ALLEGATIONS

Mr. St. Pierre is an inmate in the custody of the Connecticut Department of Correction ("DOC").  Second Amend. Compl. ¶ 4.  Defendants are all employed either by the DOC or by the University of Connecticut's Health Center ("UConn").  *Id.* ¶¶ 5-9.

### A.     Initial Injury

In or around March of 2012, while housed at Garner Correctional Institute ("Garner"), Mr. St. Pierre allegedly received an injury to his left foot from the steel footlockers that were kept under the beds at Garner.  Second Amend. Compl. ¶ 12.  Inmates at Garner are allegedly required to keep their property in the footlockers.  *Id.* ¶ 13.  The footlockers are allegedly made of heavy steel, and opened by pulling the steel door down towards the floor.  *Id.* ¶ 14.  The doors allegedly clamp down to the floor when someone tries to open them.  *Id.* ¶ 15.  While Mr. St. Pierre was retrieving a bag of coffee from the footlocker, the cover allegedly crashed down on his left foot, severely injuring his foot and toes.  *Id.* ¶ 13.  Specifically, the footlocker door allegedly slammed down and "blew his toenail off and crushed his toe."  *Id.* ¶ 16.

Mr. St. Pierre alleges that he then went to the corrections officers' desk and showed the officer on duty his injuries.  *Id.* ¶ 17.  The officer allegedly sent Mr. St. Pierre to Garner Medical.  *Id.* ¶ 18.  The doctor on duty at Garner Medical allegedly took x-rays of Mr. St. Pierre's left foot and explained to Mr. St. Pierre that he had suffered a fracture of his left foot and toe.  *Id.* ¶¶ 19-

20.  The doctor allegedly explained that he would try to have Mr. St. Pierre sent to UConn for

surgery.  *Id.* ¶ 20.  The doctor also allegedly referred Mr. St. Pierre to Dr. Berkawitz for further

review.  *Id.* ¶ 21.

  **B.**  **Follow-Up Appointment with Dr. Berkawitz**

  Around a week after Mr. St. Pierre first went to Garner Medical for his injured foot, Dr.

Berkawitz allegedly called him down to Medical.  *Id.* ¶ 22.  Dr. Berkawitz allegedly told Mr. St.

Pierre that there was actually no fracture in his foot and that surgery would not be needed

because the injuries would heal on their own.  *Id.* ¶ 23.  During this visit, Dr. Berkawitz allegedly

stated that he noticed that Mr. St. Pierre's big toe "was deforming and crossing under the toe,"

but Dr. Berkawitz allegedly stated that "it's normal" and "will correct itself," reiterating that

there was "no need for surgery."  *Id.* ¶ 24.

  Mr. St. Pierre allegedly filed several complaints and grievances against Garner Medical

staff, to no avail.  *Id.* ¶ 25.  Afterwards, Mr. St. Pierre allegedly filed a state habeas corpus

petition on May 29, 2012, to the Rockville Superior Court in Rockville, Connecticut, seeking an

injunction to have DOC provide him with the surgery that he alleges was necessary to treat his

injuries.  *Id.* ¶ 26.  On or around July 3, 2012, Judge Levin allegedly ordered the DOC to send

Mr. St. Pierre to UConn so that he could receive corrective surgery on his left foot and further

ordered the DOC to provide Mr .St. Pierre with a "sneaker pass to have sneakers sent into the

prison which would fit properly and be comfortable to [his] foot and injuries."  *Id.* ¶ 27.

  On or around April 4, 2013, Mr. St. Pierre alleges that DOC transferred him from Garner

to Corrigan Correctional Center ("Corrigan"), allegedly "in an attempt to hinder [him] from

filing grievances and exhausting his administrative remedies."  *Id.* ¶ 28.

### C.      Second Injury

On or around April 28, 2013, while at Corrigan, Mr. St. Pierre alleges that he suffered a second injury to his left foot from the same type of steel footlocker.  *Id.* ¶ 29.  Mr. St. Pierre allegedly went to the block officer on duty and showed the officer his injuries.  *Id.* ¶ 30.  The officer allegedly noted that Mr. St. Pierre's foot had turned "black and blue" and sent Mr. St. Pierre to Corrigan Medical.  *Id.* ¶ 31.  The Corrigan Medical staff allegedly told Mr. St. Pierre that he was scheduled for surgery and would be sent soon, gave Mr. St. Pierre an ice pack, and provided him with no further medical attention.  *Id.* ¶ 32.

### D.      First Surgery at UConn

On or around September 5, 2013, DOC allegedly sent Mr. St. Pierre to UConn to receive the corrective surgery that the Connecticut Superior Court order, dated July 3, 2012, allegedly required DOC to provide to Mr. St. Pierre.  *Id.* ¶ 33.  At UConn, Mr. St. Pierre was allegedly seen by Dr. Sathe.  *Id.* ¶ 34.  Dr. Sathe allegedly explained to Mr. St. Pierre that he, Dr. Sathe, would perform a surgery to remove a bone in Mr. St. Pierre's foot so that the foot "would be corrected."  *Id.* ¶ 35.  Mr. St. Pierre was then allegedly taken into surgery.  *Id.* ¶ 36.

After the surgery, Mr. St. Pierre allegedly realized that Dr. Sathe had "only done a partial surgery instead of a complete surgery as ordered by the habeas court."  *Id.* ¶ 37.  Furthermore, in addition to allegedly discovering that Dr. Sathe had only done a partial surgery, Mr. St. Pierre allegedly also discovered that Dr. Sathe "had removed the wrong side of [his] bone, making his condition worse."  *Id.* ¶ 38.

Following Mr. St. Pierre's September 5, 2013 surgery, which Mr. St. Pierre alleges was botched, Mr. St. Pierre was allegedly left in severe pain.  *Id.* ¶ 39.  Mr. St. Pierre also alleges that he was left with severe damage to his left foot, which left him unable to walk and reliant on

crutches for several months.  *Id.* ¶ 40.  During these months, Mr. St. Pierre also alleges that he was unable to perform his normal daily activities properly or sleep.  *Id.* ¶ 41.  Mr. St. Pierre also alleges that he was denied post-operative pain medication for his pain and injuries.  *Id.* ¶ 45.

Mr. St. Pierre alleges that he made several complaints and grievances, but that his "condition went unattended to" and that DOC "denied [him] proper medical attention."  *Id.* ¶ 39.  Mr. St. Pierre alleges that all of his grievances seeking to have his condition attended to were denied by Nurse Tawanna, the medical grievance coordinator at Corrigan.  *Id.* ¶ 42.  Nurse Tawanna allegedly informed Mr. St. Pierre that he could not "appeal diagnosis and treatment remedies."  *Id.* ¶ 43

Sometime after September 2013, Mr. St. Pierre alleges that he was transferred to MacDougall Correctional Institution ("MacDougall") to prevent him from filing grievances regarding his medical care at Corrigan.  Id. ¶ 46.

### E.    Second and Third Surgery

On or around May 1, 2014, DOC allegedly sent Mr. St. Pierre to UConn for a second surgery to correct Dr. Sathe's first surgery.  *Id.* ¶ 47.  Dr. Sathe was allegedly Mr. St. Pierre's doctor again.  *Id.* ¶ 48.  Dr. Sathe allegedly told Mr. St. Pierre that he would perform a corrective surgery on Mr. St. Pierre's left foot to correct the first surgery.  *Id*. ¶ 49.  Dr. Sathe and an assistant, Dr. Ziegler, then allegedly took Mr. St. Pierre into surgery.  *Id.* ¶ 50.

On or around August 2014, Dr. Sathe allegedly performed a third surgery on Mr. St. Pierre, "in an attempt to correct the damage done" in the previous September 5, 2013 and May 1, 2014 surgeries.  *Id.* ¶ 52.  Mr. St. Pierre alleges that the third surgery "encountered complications due to the passage of time since the previous surgeries and the deterioration of [his] medical condition since the surgeries."  *Id.* ¶ 53.

During this third surgery, Mr. St. Pierre alleges that "further damage was done to the nerves in [his] left foot, causing the foot to be deformed." *Id.* ¶ 54.  Mr. St. Pierre alleges that a fourth surgery was planned and then cancelled "because of [his] deteriorating medical condition." *Id.* ¶ 55.

Mr. St. Pierre alleges that, as of June 29, 2016, the date he filed his Second Amended Complaint, he has yet to receive "the proper surgery," and that he is still in "severe pain and suffering." *Id.* ¶ 56.  Mr. St. Pierre alleges that he also "experienced severe pain and was denied pain medication" by the MacDougall Medical staff "during his recovery from" the third surgery. *Id.* ¶ 57.  Mr. St. Pierre further alleges that he remains on crutches even now, almost three years later. *Id.* ¶ 58.  Mr. St. Pierre alleges that "[d]espite [his] many grievances, nothing has been done [sic] to date" and that DOC employees and UConn medical staff are, therefore, ignoring his serious medical needs. *Id.* ¶ 59.  Furthermore, Mr. St. Pierre also alleges that his left foot "is now changing colors and is getting worse, [and] infection is starting to set in," allegedly due to the lack of medical attention. *Id.* ¶ 60.

### F.    Alleged Retaliation by Nurse Martin

On or around September 5, 2013, after Mr. St. Pierre received his first surgery, Mr. St. Pierre alleges that he began to experience retaliation from DOC medical personnel. *Id.* ¶ 61.  On or around September 26, 2013, Mr. St. Pierre allegedly wrote a grievance against Nurse Martin, claiming unprofessionalism, to the Connecticut Board of Examiners for Nursing. *Id.* ¶ 62. Specifically, Mr. St. Pierre alleged that Nurse Martin "had been intentionally inflicting pain on [him] and refusing to provide [him] with medical care." *Id.* ¶ 63.  After this grievance was filed, Mr. St. Pierre alleges that Nurse Martin "started to harass and retaliate against [him] for filing the grievance and complaints." *Id.* ¶ 64.

Specifically, Mr. St. Pierre alleges that, on or around October 4, 2013, while Mr. St. Pierre was at Corrigan, after he had just finished showering, he had asked another nurse to retrieve him a pair of socks. *Id.* ¶ 65. Mr. St. Pierre alleges that the other nurse told him she would get him the socks and left to get them. *Id.* ¶ 66. When the other nurse returned, Mr. St. Pierre alleges that Nurse Martin also entered the housing unit at Corrigan and stared directly at Mr. St. Pierre and began to laugh. *Id.* ¶ 67. Mr. St. Pierre alleges that, while he did not know why Nurse Martin was staring at him and laughing, he "could only interpret it as taunting him." *Id.* ¶ 68. Mr. St. Pierre alleges that this made him nervous because Nurse Martin allegedly "had a reputation for setting inmates up and issuing false disciplinary reports." *Id.* ¶ 69.

On or around October 5, 2013, at the time when breakfast was served, Nurse Martin allegedly opened Mr. St. Pierre's cell door and entered his cell. *Id.* ¶¶ 70-71. Nurse Martin allegedly placed Mr .St. Pierre's cellmate's food tray on the table in the cell and then began to walk towards Mr. St. Pierre's bed. *Id.* ¶ 72. Nurse Martin allegedly then dropped Mr. St. Pierre's food tray on the floor and then told him, "[i]f you don't stop the bullshit and writing grievances, I will make your life a living hell." *Id.* ¶ 73. After this, Nurse Martin allegedly laughed, then told Mr. St. Pierre, "I already got rid of one person for sexual harassment. It won't be a problem. All I'll say is you flashed me." *Id.* ¶ 74. Nurse Martin allegedly left, but came back later that evening to pass out medication. *Id.* ¶ 76.

That evening, when Nurse Martin came to pass out medication, she allegedly approached Mr. St. Pierre's cell door and continued to laugh, taunting him. *Id.* ¶ 77. Mr. St. Pierre therefore allegedly filed a second grievance against Nurse Martin on October 5, 2013. *Id.* ¶ 78. Mr. St. Pierre alleges that Nurse Martin continued to subject him to retaliatory behavior until he was transferred to MacDougall. *Id.* ¶ 80.

### G.    Alleged Retaliation by Nurse Green

Following Mr. St. Pierre's second surgery on or around May 1, 2014, when he returned to MacDougall, he alleges that be began experiencing retaliatory behavior from Nurse Green, the second shift medical supervisor.  *Id.* ¶¶ 81-82.  Mr. St. Pierre alleges that this retaliatory behavior was for his filing grievances "against medical staff and UConn."  *Id.* ¶ 82.

Mr. St. Pierre alleges that UConn medical staff prescribed him post-operative medication, but that Nurse Green refused to give him this pain medication.  *Id.* ¶ 83.  Mr. St. Pierre alleges that he therefore wrote a grievance regarding the denial of his pain medication.  *Id.* ¶ 84.  He also alleges that he was left in severe pain and in anguish for several days, until he was finally seen by a doctor at MacDougall.  *Id.* ¶ 85.  Mr. St. Pierre alleges that he told the doctor that he was prescribed pain medication for three days, but that, "within a 24-hour period, [he] was denied his medication" by Nurse Green.  *Id.* ¶ 86.  The doctor allegedly told Mr. St. Pierre that he, the doctor, knew of the order for pain medication, and did not know why Nurse Green was refusing to give Mr. St. Pierre the medication.  *Id.* ¶ 87.

The unnamed doctor at MacDougall allegedly immediately gave Mr. St. Pierre double the dose of pain medication and placed him on the medication list to receive the medication three times a day for three days and two times a day for the next two days after.  *Id.* ¶ 88.  Mr. St. Pierre alleges that, within two days, Nurse Green took him off his pain medication again and forced him to take Motrin instead.  *Id.* ¶ 89.

Mr. St. Pierre alleges that he then filed a second grievance against Nurse Green and that the same unnamed doctor called him in to MacDougall Medical again.  *Id.* ¶ 90.  The doctor allegedly apologized to Mr. St. Pierre and also told Mr. St. Pierre that he did not know why

Nurse Green was not giving Mr. St. Pierre the medication and that he would talk to Nurse Green. *Id.* ¶ 91.  The unnamed doctor allegedly placed Mr. St. Pierre back on pain medication.  *Id.* ¶ 92.

Following this conversation with the unnamed doctor, Mr. St. Pierre alleges that he filed a third grievance against Nurse Green, "complaining that she was retaliating against [him] and refusing to give him his prescribed post-op pain medication ordered by UConn" and by the MacDougall Medical doctor.  *Id.* ¶ 93.

On or around May 12, 2014, Mr. St. Pierre alleges that Nurse Green allegedly called him down to the MacDougall medical unit during the second shift.  *Id.* ¶ 94.  Mr. St. Pierre allegedly spoke to Nurse Green regarding his post-op pain medication and the grievances that he had filed.  *Id.* ¶ 95.  Nurse Green allegedly asked Mr. St. Pierre if he was going to drop the grievances he had filed against her and against MacDougall Medical because he had received the second surgery.  *Id.* ¶ 96.  Mr. St. Pierre allegedly replied that he was not going to drop his grievances "because he was still in severe pain and discomfort and because [Nurse Green] had been retaliating against [him] for filing his grievances and would not stop."  *Id.* ¶ 97.

Nurse Green allegedly "became very furious" and "immediately told [Mr. St. Pierre] she was going to take him off his post-op pain medication."  *Id.* ¶ 98.  Mr. St. Pierre allegedly explained that she could not do that because both the unnamed doctor at MacDougall and the doctor at UConn had "ordered him to take the medication" and that the MacDougall doctor just put him back on the medication after Nurse Green took him off the medication the first time. *Id.* ¶ 99.  Nurse Green allegedly replied that she did not care, that it was protocol, and that Mr. St. Pierre did not meet the criteria.  *Id.* ¶ 100.

Nurse Green allegedly gave Mr. St. Pierre a shot of Turidal, a variety of Motrin, even after Mr. St. Pierre allegedly explained to her that he could not take any medication that

9

contained Motrin.  *Id.* ¶ 101.  Nurse Green allegedly told Mr. St. Pierre that Turidal did not

contain Motrin, and that he would be fine.  *Id.* ¶ 102.  Mr. St. Pierre allegedly became very sick

and broke out in blotches and hives from the Turidal, which Mr. St. Pierre allegedly later found

out contains Motrin.  *Id.* ¶ 103.

Nurse Green also allegedly told Mr. St. Pierre that he would see the doctor the following

day.  *Id.* ¶ 104.  Mr. St. Pierre alleges that he was not called to see the doctor the following day

and that he was left in severe pain.  *Id.* ¶ 105.  Mr. St. Pierre allegedly then filed his fourth

complaint against Nurse Green regarding the alleged retaliation, but "to no avail."  *Id.* ¶ 106.

## II.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is designed "merely

to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be

offered in support thereof."  *Official Comm. of Unsecured Creditors of Color Tile, Inc. v.*

*Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (internal citations omitted).  When

deciding a Rule 12(b)(6) motion to dismiss, a court must accept the material facts alleged in the

complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is

plausible that the plaintiff has a valid claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

(2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *In re NYSE Specialists Sec.*

*Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).  While courts "tak[e] as true the factual allegations of the

complaint," they "giv[e] no effect to legal conclusions couched as factual allegations."  *Port*

*Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the

speculative level," and assert a cause of action with enough heft to show entitlement to relief and

"enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 555,

570.  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555, 557 (2007). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely."  *Id.* at 556 (internal quotation marks omitted).

Additionally, because Mr. St. Pierre's Second Amended Complaint was prepared *pro se*, the Court should construe his allegations liberally.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'"); *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (explaining that pro se litigants should be afforded "special solicitude" because they are not represented by counsel).  "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  "Accordingly, the dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008)

## III.   DISCUSSION

Mr. St. Pierre first brought this case, *pro se*, on September 12, 2014.  ECF No. 1.  On November 9, 2015, the Court posted an initial review order dismissing many of Mr. St. Pierre's claims, and allowing the following claims to proceed: the Section 1983 claims of retaliation

against Nurse Martin and Nurse Green; the Section 1983 claims of Eighth Amendment deliberate indifference to his medical needs against all of the currently named Defendants; the Connecticut state law claims for negligence and medical malpractice against all of the currently named Defendants; and the claims for injunctive and declaratory relief.  Initial Review Order at 6 (noting that "Plaintiff seeks injunctive and declaratory relief and monetary damages" against Defendants in their official capacity and dismissing the claims for damages), 13-14, ECF No. 12.

On June 29, 2016, Mr. St. Pierre filed a Second Amended Complaint *pro se*, which is the operative complaint in this case.  ECF No. 39.  On August 25, 2016, the Defendants filed the current motion to dismiss the Second Amended Complaint in part.  ECF No. 50.  On October 13, 2016, the Court appointed an attorney to represent Mr. St. Pierre.  ECF No. 59.  Mr. St. Pierre subsequently filed a supplemental brief through counsel responding to Defendants' pending motion to dismiss.  ECF No. 75.

Before the Court is Defendants' motion to dismiss the Second Amended Complaint in part.  ECF No. 50.  Defendants move to dismiss the negligence and medical malpractice claims, the request for declaratory judgment, the deliberate indifference claim against Dr. Berkawitz, and the retaliation claim against Nurse Martin.  Def.'s Br. at 1, ECF No. 50-1.

## A.    Declaratory Relief Claim

Mr. St. Pierre's Second Amended Complaint requests that the Court award "declaratory [sic] judgment stating that the Defendants have acted in violation of the United States Constitution and Connecticut State law."  Second Amend. Compl. at 11.  Defendants move to dismiss Mr. St. Pierre's declaratory judgment claims in their entirety, arguing that Mr. St. Pierre seeks only retrospective declaratory relief, which Defendants argue is not available under the applicable law.  Def.'s Br. at 4-5.

Under 28 U.S.C. § 2201 (the "Declaratory Judgment Act"), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration" in most civil actions.  28 U.S.C. § 2201(a). "The purpose of the [Declaratory Judgment Act] is to enable parties to adjudicate disputes before either side suffers great damage."  *In re Combustion Equip. Assocs., Inc.*, 838 F.2d 35, 37 (2d Cir. 1988).  Courts in the Second Circuit have recognized that "declaratory relief is intended to operate prospectively" and that "[t]here is no basis for declaratory relief where only past acts are involved."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Int'l Wire Grp., Inc.*, No. 02-CIV-10338 (SAS), 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003); *see also Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*, 52 F. Supp. 3d 601, 623 (S.D.N.Y. 2014), *aff'd*, 607 F. App'x 123 (2d Cir. 2015) (dismissing plaintiff's declaratory judgment claim in part because "the declaratory judgment that [plaintiff] seeks is based entirely on Defendants' past acts" and "[plaintiff] fails to articulate the need for prospective relief").  Thus, in a case where all facts alleged in the complaint occurred during a discrete two-week period over two years before the incarcerated plaintiff filed the complaint, long after he was transferred to another facility, a court granted a motion to dismiss the declaratory judgment claims "because all damages already have accrued" and because plaintiff would "be compensated by his requested damages should he prevail in his action," making declaratory relief "inappropriate."  *Ziemba v. Lajoie*, No. 3:11-CV-845 SRU, 2012 WL 4372245, at *3 (D. Conn. Sept. 24, 2012).

Construing Mr. St. Pierre's Second Amended Complaint liberally, *Triestman*, 470 F.3d at 474, it alleges past, present, and continuing violations of his constitutional rights.  Mr. St. Pierre alleges that, as of the June 29, 2016 filing of his Second Amended Complaint, he has yet to receive "the proper surgery" to correct the previous three allegedly botched surgeries, and that he

is still in "severe pain and suffering."  Second Amend. Compl. ¶ 56.  He further alleges that his

left foot "is now changing colors" and "getting worse" and that "infection is starting to set in."

*Id.* ¶ 60.  Construing his allegations liberally, Mr. St. Pierre is alleging an ongoing deliberate

indifference to his medical needs in violation of the Eighth Amendment.

Unlike in *Ziemba*, there is no indication that Mr. St. Pierre is no longer incarcerated in

one of the facilities where the alleged wrongful acts occurred.  *See Ziemba*, 2012 WL 4372245 at

*3 (noting that plaintiff had been transferred to another correctional facility).  Indeed, Mr. St.

Pierre is allegedly still incarcerated at MacDougall, where he may remain dependent upon some

of the Defendant doctors and nurses for medical care.  *See* Pl.'s Supp. Br. at 5-6, ECF No. 75.

The Court therefore finds that it is inappropriate to dismiss Mr. St. Pierre's claim for declaratory

relief at this time, as the requested relief may be prospective because the Second Amended

Complaint concerns allegations of ongoing and potential future violations of his constitutional

rights.

### B.    State Law Claims: Negligence and Medical Malpractice Claims

Defendants argue that Mr. St. Pierre's claims for negligence and medical malpractice

under Connecticut state law should be dismissed in their entirety because they are blocked by

statutory immunity.  Def.'s Br. at 5-6.  The Second Amended Complaint brings these claims

against Defendants, but does not specify whether these claims are brought against Defendants in

their individual or official capacities.  *See* Second Amend. Compl. ¶ 108.  The Court construes

Mr. St. Pierre as bringing these claims against Defendants in both capacities.  *See* Initial Review

Order at 14 (allowing negligence and medical malpractice claims to proceed against Defendants

in both capacities).  For the reasons that follow, as to the claims against the Defendants in their

individual capacities, the Court grants Defendants' motion to dismiss Mr. St. Pierre's negligence

14

claims, but denies Defendants' motion to dismiss Mr. St. Pierre's medical malpractice claims. As for the negligence and medical malpractice claims against the Defendants in their official capacities, the Court grants Defendants' motion to dismiss both claims in their entirety.

### 1.    Individual Capacity Claims

Under Conn. Gen. Stat. § 4-165(a), "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment" and "[a]ny person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter." Conn. Gen. Stat. § 4-165(a). The statute provides that "state employees may not be held personally liable for their negligent actions performed within the scope of their employment," a "provision of statutory immunity to state employees." *Miller v. Egan*, 265 Conn. 301, 319 (2003). Mr. St. Pierre's negligence claims against all Defendants in their individual capacities are therefore dismissed because Conn. Gen. Stat. § 4-165(a) requires that negligence claims against individual state employees for negligence in their individual capacities must be brought as a "claim against the state." Conn. Gen. Stat. § 4-165(a).

The statute does, however, provide an exception allowing state officers or employees to be sued in their individual capacity for actions that are "wanton, reckless or malicious." Conn. Gen. Stat. § 4-165(a). "State employees do not . . . have statutory immunity for wanton, reckless or malicious actions. . . . For those actions, they may be held personally liable, and a plaintiff who has been injured by such actions is free to bring an action against the individual employee." *Miller*, 265 Conn. at 319. Construing Mr. St. Pierre's Second Amended Complaint liberally, *see Triestman*, 470 F.3d at 474, he appears to allege that Defendants have acted in a wanton, reckless, or malicious manner. Specifically, in relation to his medical malpractice state law

claims, Mr. St. Pierre alleges that doctors subjected him to incomplete surgeries, refused to

operate to correct the errors without court order, denied him medications, or substituted his

medications, leaving him in severe pain and suffering.  *See* Pl.'s Supp. Br. at 8.  Where

"plaintiff's allegations of medical malpractice . . . form the basis for a finding of reckless or

wanton conduct," such claims "will not be dismissed on this basis [of Conn. Gen. Stat. 4-

165(a)]."  *Arnold v. Connecticut*, No. 3:04-CV-2114 (WWE), 2012 WL 1287739, at *4 (D.

Conn. Apr. 13, 2012).  Thus, Mr. St. Pierre's medical malpractice claims against Defendants in

their individual capacities are not dismissed.[2]

### 2.        Official Capacity Claims

Mr. St. Pierre's medical malpractice and negligence claims against the Defendants in

their official capacities cannot, however, proceed because he does not allege that the Claims

Commissioner has authorized his suit.  Under Conn. Gen. Stat. § 4-160, "the Claims

Commissioner may authorize suit against the state on any claim," "[w]henever the Claims

Commissioner deems it just and equitable."  Conn. Gen. Stat. § 4-160(a).  "In each action

authorized by the Claims Commissioner . . . the claimant shall allege such authorization and the

date on which it was granted."  Conn. Gen. Stat. § 4-160(c).

---

[2] While Defendants did not raise this issue directly in the motion to dismiss, the Court notes that, under
Connecticut law, medical malpractice actions, or actions alleging that "injury or death resulted from the
negligence of a health care provider" cannot be brought unless the party, has "obtain[ed] a written and
signed opinion of a similar health care provider," to show that the claim is being brought in good faith.
Conn. Gen. Stat. § 52-190a(a).  Because this requirement is not jurisdictional, the Court does not believe
that it is necessary to dismiss Mr. St. Pierre's remaining medical malpractice claims at this time.  *See
Votre v. Cty. Obstetrics & Gynecology Grp., P.C.*, 113 Conn. App. 569, 583 (2009) ("A plaintiff's failure
to comply with the requirements of § 52–190a(a) does not destroy the court's subject matter jurisdiction
over the claim; it does not affect the power of the court to hear her medical malpractice action.").
Plaintiff should, however, address this issue, perhaps at the summary judgment stage, as dismissal "is the
proper statutory remedy for deficiencies under" Conn. Gen. Stat. § 52-190a.  *Bennett v. New Milford
Hosp., Inc.*, 300 Conn. 1, 29 (2011).

Any claim brought against a state official in his or her official capacity is necessarily a claim against the state. *See Miller*, 265 Conn. at 313 ("a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state") (internal quotation marks and citations omitted).  Because Conn. Gen. Stat. § 4-160 governs "suit[s] against the state on any claim," the authorization of the Claims Commissioner is required before Mr. St. Pierre may bring his negligence claim against Defendants in their official capacities.  Conn. Gen. Stat. § 4-160(a).

Furthermore, with "any claim alleging malpractice against the state, a state hospital or against physical, surgeon . . . or other licensed health care provider employed by the state, the attorney or party filing the complaint may submit a certificate of good faith to the" Claims Commissioner, and "[i]f such a certificate is submitted, the Claims Commissioner shall authorize suit against the state."  Conn. Gen. Stat. § 4-160(b).  The Second Amended Complaint does not indicate that Mr. St. Pierre provided such a certificate of good faith to the Claims Commissioner, nor does it indicate that the Claims Commissioner authorized Mr. St. Pierre's medical malpractice claim against the Defendants in their official capacities.

Mr. St. Pierre has not asserted that he filed a claim with the State Claims Commissioner or that he received the required authorization to file suit against the State and its officials.  Accordingly, the negligence and medical malpractice claims against the defendants in their official capacities are barred by statutory immunity under Conn. Gen. Stat. § 4-160.  "The doctrine of sovereign immunity protects state officials and employees from lawsuits resulting from the performance of their duty."  *Hultman v. Blumenthal*, 67 Conn. App. 613, 620 (2002), *cert. denied*, 259 Conn. 929 (2002).  There is no allegation that the Defendants in their official capacities waived their sovereign immunity to be sued as to any negligence or malpractice

claims. Thus, those claims as asserted against the Defendants in their official capacities are dismissed as barred by sovereign immunity.

### C.     Eighth Amendment Deliberate Indifference Claim against Dr. Berkawitz

Defendants move to dismiss Mr. St. Pierre's Eighth Amendment deliberate indifference claim against Dr. Berkawitz.  Def.'s Br. at 6-9.  Mr. St. Pierre makes the following allegations against Dr. Berkawitz: first, that Dr. Berkawitz allegedly saw Mr. St. Pierre at Garner after Mr. St. Pierre's first injury and after another unnamed doctor at Garner allegedly recommended that Mr. St. Pierre receive surgery at UConn to treat the injury, Second Amend. Compl. ¶¶ 19-21; second, that Dr. Berkawitz allegedly told Mr. St. Pierre that he did not have a fracture in his foot and did not need surgery, *id.* ¶¶ 22-23; and third, despite allegedly observing that Mr. St. Pierre's big toe was deforming and crossing, Dr. Berkawitz still told Mr. St. Pierre that the injury would correct itself and did not require surgery, *id.* ¶ 24.

To state a claim for deliberate indifference to a serious medical need, Mr. St. Pierre must show (1) a deprivation that is "sufficiently serious," i.e., a deprivation that presents a "condition of urgency, one that may produce death, degeneration, or extreme pain," and (2) reckless indifference, that is, that "defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, *Foote v. Hathaway*, 513 U.S. 1154 (1995). There are both objective and subjective components to the deliberate indifference standard.  *Id.*  Objectively, the alleged deprivation must be "sufficiently serious."  *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The condition must be "one that may produce death, degeneration or extreme pain." *Hathaway*, 37 F.3d at 66.  Subjectively, the defendants must have been actually aware of a

substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 262, 279-80 (2d Cir. 2006).

"Mere disagreement over the proper treatment" does not create a violation of the Eighth Amendment and "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim," as long as the treatment is adequate. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). As Defendants argue, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Instead, defendants "must act with a sufficiently culpable state of mind," and "[d]eliberate indifference is a mental state equivalent to subjective recklessness," that "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280.

Mr. St. Pierre is alleging more than a "mere disagreement over the proper treatment," *Chance*, 143 F.3d at 703, or Dr. Berkawitz's "negligen[ce] in diagnosing or treating a medical condition." *Estelle*, 429 U.S. at 106. Instead, he alleges that Dr. Berkawitz ignored another doctor's recommendation that Mr. St. Pierre had a fracture that required surgery, and further ignored Mr. St. Pierre's medical condition, including a big toe that was "deforming and crossing," denying Mr. St. Pierre surgery and treatment despite alleged awareness of a substantial risk of harm. Second Amend. Compl. ¶¶ 20-24. The Court must hold Mr. St. Pierre's *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers," *Erickson*, 551 U.S. at 94, and dismissal of "a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff*, 537 F.3d at 191. In that light, it is clear that the Second Amended Complaint is sufficient to state an Eighth Amendment claim for

deliberate indifference to Mr. St. Pierre's medical needs against Dr. Berkawitz, and the Court denies Defendants' motion to dismiss this claim.

### D.      First Amendment Retaliation Claim against Nurse Martin.

Defendants also move to dismiss Mr. St. Pierre's First Amendment retaliation claim against Nurse Martin.  Def.'s Br. at 9-11.  Mr. St. Pierre alleges that he had filed a grievance against Nurse Martin for alleged unprofessionalism for allegedly inflicting pain on him and denying him medical care, Second Amend. Compl. ¶¶ 62-63; that Nurse Martin subsequently began harassing him and retaliating against him, *id.* ¶ 64; that Nurse Martin laughed at him and taunted him, *id.* ¶¶ 67-69; that Nurse Martin allegedly entered his cell and dropped his food tray to the floor, *id.* ¶¶ 70-73; and that Nurse Martin allegedly also threatened to "make [his] life a living hell" if he did not stop filing grievances and allegedly threatened to make a false sexual harassment allegation against him, *id.* ¶¶ 74-76.

To state a First Amendment retaliation claim under section 1983, a prisoner must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal citation omitted).  "Insulting or disrespectful comments directed at an inmate generally do not rise to" the level of adverse action sufficient to support a retaliation claim.   *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003).  The Second Circuit has therefore affirmed the dismissal of a prisoner plaintiff's claims that a prison hard "called [him] names," because such allegations failed to support a retaliation claim. *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986).  The Second Circuit has also held, however, that "in the prison context," an "adverse action" sufficient to support a retaliation claim is one that "objectively" "would deter a similarly situated individual

of ordinary firmness from exercising constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (internal quotation marks omitted).

Defendant argues that, because the Second Amended Complaint alleges that Nurse Martin's retaliatory actions, after Mr. St. Pierre's allegedly filed a grievance against her, were limited to taunting, verbal threats, and verbal harassment, the allegations are not enough to rise to the level of adverse action that supports a retaliation claim. *See* Def.'s Br. at 9-11; *Davis*, 320 F.3d at 353. The Court disagrees. *Davis* involved only "[i]nsulting or disrespectful comments," and not the verbal threats that were present here. *Davis*, 320 F.3d at 353. Mr. St. Pierre alleges that Nurse Martin threatened to make Mr. St. Pierre's life a living hell specifically because he filed grievances. This passes the objective test because it could "deter a similarly situated individual of ordinary firmness from exercising constitutional rights" to file grievances. *Gill*, 389 F.3d at 381.

Furthermore, Mr. St. Pierre alleges that he has been in a state of severe pain and suffering throughout the time relevant to his case and that he remains on crutches. Second Amend. Compl. ¶¶ 56-58. Because Mr. St. Pierre alleges that he is a vulnerable individual that is dependent on prison staff for medical care, verbal threats or harassment from a medical professional employed in the prison could conceivably pass the objective test of "deter[ring] a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill*, 389 F.3d at 381. The Court therefore denies Defendants' motion to dismiss the retaliation claim against Nurse Martin.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss the Complaint in part, ECF No. 50, is **GRANTED** in part and **DENIED** in part. The Defendants' motion is granted as to

Mr. St. Pierre's negligence claims against all Defendants in their individual capacities and as to Mr. St. Pierre's negligence claims and medical malpractice claims against all Defendants in their official capacities.  Mr. St. Pierre's medical malpractice claims against the Defendants in their individual capacities will proceed, as will his request for declaratory judgment, the deliberate indifference claim against Dr. Berkawitz, and the retaliation claim against Nurse Martin.

   SO ORDERED at Bridgeport, Connecticut, this 20th day of March, 2017.


            /s/ Victor A. Bolden
         Victor A. Bolden
         United States District Judge