**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOHN A. ST. PIERRE,<br>        Plaintiff,<br><br>        v.<br><br>NURSE TAWANNA, NURSE KIM<br>MARTIN, et al.,<br>        Defendants. | No. 14-cv-1866 (VAB) |

## <u>ORDER ON MOTION FOR HEARING AND MOTION FOR PRELIMINARY INJUNCTIVE RELIEF</u>

Plaintiff, John A. St. Pierre, brings this action against Defendants, Nurse Tawanna[1],

Nurse Heidi Green, Nurse Kim Martin, Doctor Samuel Berkawitz, and Doctor Vinayak M.

Sathe, bringing claims alleging deliberate indifference to his medical needs in violation of the

Eighth Amendment and retaliation against him for filing grievances in violation of the First

Amendment under 42 U.S.C. § 1983 ("Section 1983"), as well as negligence and medical

malpractice under Connecticut state law.  Second Amend. Compl., ECF No. 39.  The Court has

granted in part and denied in part Defendants' motion to dismiss the Second Amended

Complaint in part, ECF No. 50, dismissing Mr. St. Pierre's negligence claims against all

Defendants in their individual and official capacities and dismissing Mr. St. Pierre's medical

malpractice claims against all Defendants in their official capacities.  ECF No. 80.  Mr. St.

Pierre's other claims will proceed.

On August 24, 2016, Mr. St. Pierre filed a motion, *pro se*, requesting that the Court hold

an "emergency hearing" and order "preliminary injunctive relief" requiring Defendants to

---

[1] The parties have not provided a full name for Nurse Tawanna.

1

provide him with certain medical care.  ECF No. 48.  Mr. St. Pierre initiated this action *pro se*, and the Court appointed counsel for him on October 13, 2016.  ECF No. 60.  During a telephonic hearing regarding the Defendants' pending motion to dismiss, Mr. St. Pierre indicated, through counsel, that he was still pursuing the relief requested in his motion for an emergency hearing and preliminary injunctive relief.  ECF No. 79.

For the reasons that follow, the Court **DENIES** without prejudice Mr. St. Pierre's motion for an emergency hearing and preliminary injunctive relief.

## I.    FACTUAL BACKGROUND

The allegations in Mr. St. Pierre's Second Amended Complaint are detailed in the Court's order granting in part and denying in part Defendants' motion to dismiss.  ECF No. 80. In support of his motion for an emergency hearing and preliminary injunctive relief, Mr. St. Pierre brings the additional allegations below.  Motion, ECF No. 48.  Defendants oppose his motion, ECF No. 65, presenting supporting documentation and Mr. St. Pierre's medical records under seal, ECF No. 66; ECF No. 67.

### A.    Factual Allegations

In support of his motion, Mr. St. Pierre alleges that Defendants are subjecting him to "deliberate denial of the necessary and prescribed medical care and medication."  Motion at 1. He alleges that this denial of medical care and retaliation is "endangering his health and safety, inflicting pain and physical injury, and may constitute a threat to his life," without the immediate intervention of the Court.  *Id.*

#### 1.    Reflex Sympathetic Dystrophy

Specifically, Mr. St. Pierre alleges that, as a result of the alleged errors that occurred during his prior surgeries, he has now been diagnosed with Reflex Sympathetic Dystrophy

("RSD"), a disabling nerve condition causing severe chronic nerve pain and progressive nerve damage.  Motion at 2.  He alleges that though treatment for the RSD "has been ordered," such treatment "has never been carried out by certified and licensed Doctor[s] and medical therapist[s]."  *Id.* at 3.

### 2.    Broken Crutches

Mr. St. Pierre alleges that Defendants have, despite his repeated requests, failed to replace his broken crutches.  Motion at 3.  He alleges that, as a result of the allegedly broken crutches, he has fallen and injured himself multiple times.  *Id.*  He alleges that he most recently fell during the week of August 11, 2016, "severely injur[ing] his right hand and shoulder even more."  *Id.*  He alleges that this injury resulted in him being confined to a wheelchair, and that Defendants have failed to provide him with any treatment for the injuries from the falls.  *Id.*

### 3.    Pain Medication

Mr. St. Pierre further alleges that Defendants have repeatedly denied him access to his prescribed pained medications and repeatedly allowed his prescriptions to lapse.  Motion at 4. He alleges that the medical staff at MacDougall Walker Correctional Institute ("MacDougall") have repeatedly ignored his requests for corrective action.  *Id.*

### 4.    Toenail Treatment

Mr. St. Pierre also alleges that, in August of 2016, he was taken to UConn Health Center ("UConn") for a visit concerning the "deterioration of his toenails," which required "the attention of a specialist."  Motion at 4.  At UConn, Dr. Berkawitz was allegedly the specialist who evaluated Mr. St. Pierre's condition.  *Id.*  Dr. Berkawitz allegedly failed to provide Mr. St. Pierre with medication for his toenails.  *Id.*

5.      **Alleged Retaliation**

Mr. St. Pierre alleges that Nurse Green has continued to interfere with his medical care as retaliation for his complaints and this lawsuit.  Motion at 4-5.  Mr. St. Pierre alleges that his written requests for medical care "are regularly 'lost'" and that the "few requests which are responded to are usually denied."  *Id.* at 5.  He further alleges that when he seeks assistance from other staff members at MacDougall, Nurse Green "repeatedly interfere[s] to prevent [him] from receiving aid," including by "vetoing accommodations under the Americans with Disabilities Act, and preventing [him] from receiving prescribed footwear [sic]."  *Id.*

During the week of August 8, 2016 to August 12, 2016, Mr. St. Pierre alleges that he was in the Medical Unit at MacDougall to seek medical care, but that he was turned away without receiving treatment.  Motion at 5.  He alleges that, while he was at the Medical Unit, he overheard two members of the medical staff "laughing at him" and allegedly stating that he "was suing the Medical staff but that he would not live long enough to get out of prison."  *Id.*

B.      **Records of Medical Treatment**

Defendants oppose Mr. St. Pierre's motion for an emergency hearing and preliminary injunctive relief.  ECF No. 64.  As part of their opposition, the Defendants present documents from Mr. St. Pierre's medical records and affidavits from health care providers familiar with Mr. St. Pierre's medical records, which are filed under seal.  ECF No. 66; ECF No. 67.

1.      **Reflex Sympathetic Dystrophy**

Defendants present the affidavit of a Dr. Wu, who is a director at UConn and is familiar with Mr. St. Pierre's history of treatment at UConn.  Wu Aff. ¶¶ 2-4, ECF No. 67.  Mr. St. Pierre received his RSD diagnosis on July 20, 2015.  *Id.* ¶ 11.  Throughout Mr. St. Pierre's history of

4

treatment at UConn, he had received numerous pain medications and continuous pain management treatment, including "dextromethorphan, Neurontin (gabapentin), Ultran (tramadol), codeine, Tylenol #3 (acetaminophen with codeine), methadone, Lyrica (pregablin), and oxycodone." *Id.* ¶¶ 9-10.

Since his diagnosis of RSD, Mr. St. Pierre has also been referred to the Hartford Hospital Pain Treatment Center, in September 2015.  Wu Aff. ¶ 12.  Doctors there recommended "Calmare treatment, which was one of the latest treatments for pain management and is not normally covered by private health insurance policies." *Id.*  Calmare therapy is a ten-session program that takes place over two weeks, and Mr. St. Pierre received this treatment in January 2016. *Id.* ¶ 13.  Doctors ultimately concluded that the Calmare sessions did not result in any "noted benefit" for Mr. St. Pierre. *Id.* ¶ 14.

Or February 10, 2016, Mr. St. Pierre received another referral to the Hartford Hospital Pain Treatment Center.  Wu Aff. ¶ 14.  The doctor there noted that, since his last appointment, Mr. St. Pierre was prescribed Lyrica, which was later discontinued; gabapentin; and oxycodone. *Id.*  On February 11, 2016, Mr. St. Pierre declined a prescription of Elavil "because it was minimally effective previously and caused a metallic taste in his mouth." *Id.* ¶ 15.  Mr. St. Pierre instead requested an increased dose of oxycodone, which the medical staff agreed to "after advising [him] of the side effects, addictive properties, and the possibility of respiratory depression." *Id.*

### 2.  Broken Crutches

The medical records confirm that Mr. St. Pierre was prescribed crutches on July 28, 2015. Lightner Aff. ¶ 4, ECF No. 66.  On August 31, 2015, Mr. St. Pierre was prescribed special crutches with forearm support, which MacDougall did not have in stock, so MacDougall staff

made a special order on September 2, 2015. *Id.*; Lightner Aff Ex. 1, Clinical Record at 2. MacDougall received the crutches and issued them to Mr. St. Pierre on October 13, 2015, and Mr. St. Pierre returned his previous set of crutches. Lightner Aff. ¶ 5.

The records also confirm that, on August 11, 2016, Mr. St. Pierre notified MacDougall staff that his crutch had bent and that he had fallen. Lightner Aff. ¶ 6. Mr. St. Pierre was seen at sick call later that day and reported to the nurse that he had pain in his right hand. *Id.* The nurse examined Mr. St. Pierre and observed minimal swelling with no injury or bruising and a full range of motion. *Id.* The nurse provided Mr. St. Pierre with Tylenol, an ice pack, and issued him a wheelchair to use while his crutches were repaired. *Id.* Mr. St. Pierre returned to the Medical Unit the next day, on August 12, 2016. *Id.* ¶ 17. Mr. St. Pierre received an x-ray of his hand, which "showed no acute bone [sic] or joint space abnormalities" and "no fractures," though there was a "deformity in the region of the neck bone of his hand, which may have been related to an old boxer's fracture which had healed" as well as "some deformity . . . in the third metacarpal, which was likely also related to an older fracture that had healed." *Id.* The nurse reported that Mr. St. Pierre complained about his faulty crutches and indicated that he would call his lawyer. *Id.* The nurse offered to assess his hand again, but Mr. St. Pierre refused and left Medical. *Id.* Mr. St. Pierre eventually received new forearm support crutches on September 2, 2016. *Id.* ¶ 8.

On September 25, 2016, Mr. St. Pierre reported another fall and injury to his right shoulder. Lightner Aff. ¶ 9. MacDougall's facility doctor saw Mr. St. Pierre and sent him to UConn for an x-ray, which showed no fracture or dislocation. *Id.* Upon Mr. St. Pierre's return from UConn, he was given a wheelchair. *Id.* ¶ 10. On October 18, 2016, Mr. St. Pierre was seen

6

by medical staff for complaints of shoulder pain.  *Id.*  Mr. St. Pierre currently uses a wheelchair because he reports that he cannot use his crutches due to shoulder pin.  *Id.*

### 3.     Pain Medication

Throughout Mr. St. Pierre's history of treatment at UConn, he had received numerous pain medications and continuous pain management treatment.  Wu Aff. ¶¶ 9-10.  The medications included "dextromethorphan, Neurontin (gabapentin), Ultran (tramadol), codeine, Tylenol #3 (acetaminophen with codeine), methadone, Lyrica (pregablin), and oxycodone."  *Id.* ¶ 10.  Medication Administration Records indicate that, in August, September, and October of 2016, Mr. St. Pierre continuously received regular doses of oxycodone and Neurontin, among other medications.  Medication Admin. Record, ECF No. 66.  Mr. St. Pierre's pain medication prescription history is also further described above, in relation to his RSD diagnosis and treatment.  In addition to the medication and Calmare treatment, Mr. St. Pierre was also enrolled in cognitive behavioral therapy, or "psychological treatment for chronic pain," which will be a twelve-session program with a licensed social worker.  Lightner Aff. ¶ 12.

During an October 18, 2016 visit to MacDougall medical with complaints of shoulder pain, Mr. St. Pierre reported getting his oxycodone as scheduled and that he may have only "missed a total of three doses all year."  Lightner Aff. ¶ 10; Clinical Record at 14.  At that visit, Mr. St. Pierre declined a prescription for Levorphanol.  Lightner Aff. ¶ 10.

### 4.     Toenail Treatment

Defendants have provided the medical records from Mr. St. Pierre's visit at UConn with Dr. Berkawitz.  UConn Record, ECF No. 66.  The record notes that, on August 8, 2016, Dr. Berkawitz saw Mr. St. Pierre, who reported that "his pain management doctor wants him on antifungal medication because his toenails are brittle, cracking, bleeding, and painful."  *Id.*  Dr.

Berkawitz examined Mr. St. Pierre and found that there was "minimal opacity" to his toenails, and "no evidence of wound nor soft tissue infection," "[h]air growth and skin turgor are within normal limits," and that "[b]oth feet are pulsatile with immediate capillary refill," though there was "relative rigidity of both feet. *Id.* Dr. Berkawitz concluded that, in his medical opinion, Mr. St. Pierre's toenails were normal, and that the symptoms were "secondary to his RSD." *Id.* Dr. Berkawitz noted that Mr. St. Pierre was "hostile" from the beginning of the visit, when Dr. Berkawitz stated that he did not believe that Mr. St. Pierre should undergo medical treatment for toenail fungus. *Id.*

### 5.    Alleged Retaliation

Defendants' sealed documents do not specifically address the alleged retaliation by Nurse Green. As noted above, the documents show that Mr. St. Pierre has regularly been receiving various types of medical treatment, including his pain medication.

## II.    DISCUSSION

A "preliminary injunction is an extraordinary and drastic remedy," which a court should not grant "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis removed). To receive a preliminary injunction, a party must establish "(1) either (a) a likelihood of success on the merits of its case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor, and (2) a likelihood of irreparable harm if the requested relief is denied." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 152-53 (2d Cir. 2007). If the movant seeks a "mandatory injunction that alters the status quo by commanding a positive act," he or she "must meet a higher standard." *D.D. ex rel. V.D. v. N.Y. City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006). Specifically, the movant must

"make a clear or substantial showing of a likelihood of success on the merits," a "standard especially appropriate when a preliminary injunction is sought against [the] government." *Id.* (internal quotation marks omitted).  Because Mr. St. Pierre requests that the Court order Defendants to provide medical care that he alleges he is not currently receiving, Mr. St. Pierre is requesting a "mandatory injunction that alters the status quo" and must, therefore, meet the higher standard of showing "a likelihood of success on the merits." *Id.*

"[T]here is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it." *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997) (affirming district court's denial of preliminary injunction without hearing).  If "the record before the court permits it to conclude that there is no factual dispute that must be resolved by an evidentiary hearing, a preliminary injunction may be granted, or denied, without hearing oral testimony." *Lopez v. McEwan*, No. 3:08-CV-678 (JCH), 2009 WL 179815, at *1 (D. Conn. Jan. 23, 2009) (finding that plaintiff failed to "allege any specific facts" supporting his allegations and provided only general allegations of irreparable harm and defendants' ignor[ing], delay[ing], and los[ing] his properly filed grievances"); *see also Jarecke v. Hensley*, 552 F. Supp. 2d 261, 264 (D. Conn. 2008) (denying motion for preliminary injunction without a hearing where incarcerated plaintiff requested medical care and defendants' opposition attached affidavits from medical care providers and plaintiff's medical records).  Based on the filings currently before the Court, a hearing and oral testimony and oral argument regarding Mr. St. Pierre's motion is not necessary.

To the extent that Mr. St. Pierre's motion for preliminary injunctive relief requests that Defendants provide him with medical care that he alleges they are currently failing to provide, he

must show a "a likelihood of success on the merits" as to his Eighth Amendment deliberate indifference claim to receive injunctive relief.[2] *D.D. ex rel. V.D.*, 465 F.3d at 510. To prevail on his Section 1983 claim for deliberate indifference to his medical needs in violation of the Eighth Amendment, Mr. St. Pierre must show (1) a deprivation that is "sufficiently serious," i.e., a deprivation that presents a "condition of urgency, one that may produce death, degeneration, or extreme pain," and (2) reckless indifference, that is, that "defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, *Foote v. Hathaway*, 513 U.S. 1154 (1995). There are both objective and subjective components to the deliberate indifference standard. *Id.* Objectively, the alleged deprivation must be "sufficiently serious." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The condition must be "one that may produce death, degeneration or extreme pain." *Id.* Subjectively, the defendants must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 262, 279-80 (2d Cir. 2006).

"Mere disagreement over the proper treatment" does not create a violation and "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Instead, to

---

[2] Mr. St. Pierre's remaining claims also include claims for medical malpractice and First Amendment retaliation. *See* Order on Motion to Dismiss, ECF No. 80. Because Mr. St. Pierre's motion for preliminary injunction requests that the Court order Defendants to provide him with medical care, the Court analyzes only his Eighth Amendment deliberate indifference claim. As to his medical malpractice claims, the Court can identify no precedent under Connecticut law suggesting that a court may order a defendant to provide certain medical care going forward as a remedy for medical malpractice. *See, e.g.*, *Earlington v. Anastasi*, 293 Conn. 194, 205-06 (2009) (describing typical award in medical malpractice action which include monetary awards for economic and noneconomic damages). To the extent that Mr. St. Pierre requests that Defendants provide him with additional medical care, he can only request such relief on the basis of his deliberate indifference claim. As to the First Amendment retaliation claim, the only injury that Mr. St. Pierre refers to is an alleged denial of medical care, thus this claim is also derivative of the deliberate indifference claim.

prevail on an Eighth Amendment deliberate indifference claim, the plaintiff must show that defendants knew of and disregarded an "excessive risk to inmate health or safety," with a "state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).

Mr. St. Pierre's motion provides only general allegations that Defendants have failed to provide medical care, which Defendants rebut with affidavits from medical professionals familiar with Mr. St. Pierre's treatment history and Mr. St. Pierre's medical records. Defendants' documents show that, contrary to Mr. St. Pierre's allegations, Defendants:

- Provided treatment for Mr. St. Pierre's RSD, including Calmare therapy and various types of pain medication including an increased dose of oxycodone at Mr. St. Pierre's request;

- repeatedly provided Mr. St. Pierre with crutches and replacement crutches and provided him with a wheelchair when replacement crutches were on order, until Mr. St. Pierre reported that he could not use crutches due to shoulder pain;

- provided him with medical treatment on August 11, 2016 (in the form of an examination, Tylenol, an ice pack, and by issuing him a wheelchair) and August 12, 2016 (including an x-ray of his hand and the offer to assess his hand again that he refused) following his reported fall due to allegedly faulty crutches on August 11, 2016;

- sent Mr. St. Pierre to UConn on September 25, 2016 following another alleged fall on his crutches, where he received an x-ray;

- saw Mr. St. Pierre in the medical unit on October 18, 2016 for his complaints of shoulder pain;

- continuously provided Mr. St. Pierre with various types of pain medications including dextromethorphan, Neurontin (gabapentin), Ultran (tramadol), codeine, Tylenol #3 (acetaminophen with codeine), methadone, Lyrica (pregablin), and oxycodone," Wu Aff. ¶ 10;

- continuously provided Mr. St. Pierre with regular doses of various pain medications including oxycodone and Neurontin in August 2016, when Mr. St. Pierre filed his motion, September 2016, and October 2016, Medication Admin. Record, such that Mr. St. Pierre reported getting his oxycodone as scheduled and that he may have only "missed a total of three doses all year," Lightner Aff. ¶ 10, Clinical Record at 14;

- enrolled him in cognitive behavioral therapy for pain with a licensed social worker, Lightner Aff. ¶ 12; and

- referred Mr. St. Pierre to UConn and treatment with Dr. Berkawitz with regards to the alleged fungal infection of his toenails, at which point Dr. Berkawitz observed no evidence of infection and that his toenails were normal.

In light of this documented history of Defendants providing Mr. St. Pierre with pain medication and medical treatment, the Court finds that Mr. St. Pierre's motion has not made the required "clear or substantial showing of a likelihood of success on the merits" of his underlying Section 1983 Eighth Amendment deliberate indifference claims that would warrant preliminary injunctive relief. *D.D. ex rel. V.D.*, 465 F.3d at 510.

Mr. St. Pierre's motion has not shown that "defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm." *Hathaway*, 37 F.3d at 66. Instead, his motion only demonstrates "[m]ere disagreement over the proper

treatment," that does not, by itself, support an Eighth Amendment deliberate indifference claim.

*Chance*, 143 F.3d at 703.

**III.   CONCLUSION**

For the foregoing reasons, the Court **DENIES** without prejudice Mr. St. Pierre's motion

for emergency hearing and preliminary injunctive relief.

SO ORDERED at Bridgeport, Connecticut, this 20th day of March, 2017.


    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge